UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAWN M. DAVIS, individually and on behalf
of all others similarly situated,

                    Plaintiff,

v.

NAVIENT CORPORATION, NAVIENT SOLUTIONS, LLC,
FORMERLY KNOWN AS SALLIE MAE, INC., and
STUDEBT, ALSO KNOWN AS STUDENT DEBT
RELIEF GROUP, ALSO KNOWN AS STUDENT LOAN
RELIEF COUNSELORS

                    Defendants.

_____

**CLASS ACTION
COMPLAINT**
**Case No.:** *17-cv-992*

      Plaintiff, Shawn M. Davis, individually and on behalf of all others similarly situated

(the "Class" and the "Subclass"), by and through his attorneys, Hagerty & Brady, for his

Complaint in the above-entitled action, alleges as follows, upon information and belief:

## NATURE OF THE CASE

      1.      Plaintiff brings this action individually and on behalf of all others similarly

situated seeking damages and any other available legal or equitable remedies resulting from

breach of contract, tortious interference with contract, violations of the Telephone

Consumer Protection Act, and breach of fiduciary duty, involving actions of Navient

Corporation, Navient Solutions LLC f/k/a Sallie Mae, Inc., and Studebt a/k/a Student

Debt Relief Group a/k/a Student Loan Relief Counselors.

2.      Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of New York, seeks relief on behalf of a Class, and Defendants are all citizens of states other than New York.  Plaintiff also has sustained damages, which, when aggregated among a proposed class in the thousands, exceeds the $5,000,000.00 threshold for federal court jurisdiction. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

3.      This Court also has original jurisdiction over this matter under 28 U.S.C. § 1331 because some of the claims arise under federal law, the Telephone Consumer Protection Act, 47. U.S.C. § 227 et seq. ("TCPA").

4.      This Court has personal jurisdiction over Defendants because they have minimum contacts with the United States, this judicial district, and New York State, and they intentionally availed themselves of the laws of the United States and this State by conducting a substantial amount of business throughout this State, including the solicitation of customers, the servicing of accounts within this State and district, the use of telephone lines and electronic communications ("wires") within this State and district, and the use of regular mail within this State and district.

## VENUE

5.      Venue is proper in the United States District Court for the Western District of New York pursuant to 18 U.S.C. 1391(b) and 18 U.S.C. § 1441(a) because Defendants do business within the state of New York and in this district.

2

## PARTIES

6.      Plaintiff Shawn M. Davis ("Plaintiff") is an individual residing in Buffalo, New York.

7.      Defendant Navient Corporation ("Navient") is a Delaware corporation with its principal place of business in Delaware. Navient is a holding company and exercises control over Defendant Navient Solutions, LLC. At all times material to this complaint, Navient transacted business in this district, whether directly or through its subsidiaries. Upon information and belief, Navient, or one of its subsidiaries, is physically located within this district.

8.      Formerly known as Sallie Mae, Inc., defendant Navient Solutions, LLC, a wholly-owned subsidiary of Navient, is a Delaware limited liability company with its principal place of business in Delaware. Navient Solutions, LLC principally engages in the servicing of federal and private student loans for more than 12 million borrowers. At all times material to this complaint, Navient Solutions, LLC has transacted business in this district and throughout the country.

9.      Defendant Studebt, also known as Student Debt Relief Group and Student Loan Relief Counselors, is upon information and belief, a corporation and resident of the State of California, with its principal place of business in Los Angeles, California. Defendant Studebt a/k/a Student Debt Relief Group a/k/a Student Loan Relief Counselors (together hereinafter referred to as "Studebt"), is or was an entity that purports to be in the business of providing debt consolidation services for students and former students with student loan debt. At all times material to this complaint, Studebt has transacted business in this district and across the country.

3

## STATEMENT OF FACTS

### NAVIENT, FFELP LOANS, AND THE BUSINESS OF STUDENT LOANS

10.     Defendant Navient is a publicly traded company, with annual revenue of approximately five billion dollars.  Navient has a number of wholly owned subsidiaries, including Defendant Navient Solutions, LLC ("Navient Solutions").

11.     Navient Solutions is the largest student loan servicer in the United States, servicing over $300 billion of student loans.

12.     Navient holds the nation's largest portfolio of education loans insured or federally guaranteed under the Federal Family Education Loan Program ("FFELP").  As of December 31, 2016, that portfolio totaled $87.7 billion in FFELP Loans.

13.     FFELP Loans are loans that were made to students by private student loan lenders, such as Sallie Mae and Navient Solutions, but are guaranteed at between 97% and 100% of principal and accrued interest by the federal government.  Such loans were first authorized by Title IV of the Higher Education Act of 1965.

14.     Navient, now and at all times relevant to this lawsuit, pools individual student loans held in its portfolio into securitized trusts backed by student loans, also known as student loan asset backed securities ("SLABS"), which are then sold to investors in staged classes, or tranches.  At all times relevant to this lawsuit, and to this day, SLABS backed by FFELP loans are Defendant Navient's greatest source of revenue.

15.     Although new FFELP Loans are no longer being originated, as explained further below, Navient continues to acquire and finance existing FFELP Loans, which it then repackages and sells to investors as SLABS.

4

16.    Navient Solutions services Navient's FFELP portfolio of loans. In other words, Defendant Navient Solutions interacts with the borrowers whose loans make up Navient's FFELP $87.7 billion portfolio.

## LEGISLATIVE CHANGES TO FFELP

17.    The Health Care and Education Reconciliation Act of 2010, signed into law on March 30, 2010, ended the FFELP program. However, existing FFELP loans remained and remain in existence.

18.    The Health Care and Education Reconciliation Act of 2010 provided an opportunity for existing FFELP borrowers to consolidate their FFELP loans into a new direct consolidation loan with the Department of Education. To incentivize FFELP borrowers, the Department of Education offered a discount of 0.25% interest on the direct consolidation loan, which otherwise would simply be the weighted average of their FFELP loans.

19.    Given the option for a discounted interest rate, a direct consolidation loan was in the best interest of virtually every FFELP borrower.

20.    Because the direct consolidation loans were made directly from the Department of Education, upon consolidation, the owners of FFELP loans, such as Defendant Navient, would face a loss of revenue due to the sudden prepayment of these loans.

21.    In fact, Defendant Navient warned its shareholders that as a result of the Department of Education's consolidation program, Navient could face an increase in prepayment of FFELP loans, which would mean, among other things, the fees Navient

earned as servicer would decrease, and the value of any residual interest Navient owned in the securitization trust would decline.

22.    Navient also warned its shareholders that the Department of Education's loan consolidation program threatened to reduce Navient's profits from servicing and interest income as well as its net interest margin, which could materially adversely affect Navient's liquidity and income.

23.    In other words, although the legislation and Department of Education's consolidation program would be in the best interest of existing FFELP student loan borrowers, it presented an existential threat to the main source of revenue for Defendant Navient.

24.    Notwithstanding the new legislation and the consolidation program offered to existing FFELP borrowers, it was at all times relevant to this lawsuit, and remains to this day, a stated corporate goal of Navient to maximize profits from its FFELP portfolio of loans.

<h3 style="text-align:center">PLAINTIFF'S STUDENT LOAN EXPERIENCE</h3>

25.    In August 2005, after graduating high school in Cazenovia, New York, Plaintiff enrolled as an undergraduate college student at Niagara University in Niagara Falls, New York.

26.    In order to pay tuition, room, board, and other expenses while a student, Plaintiff, like millions of other college students across the country, took out student loans.

27.    Plaintiff's student loans consisted of a mixture of FFELP loans, direct federal student loans, and private loans.   One of these private loans was executed with a cosigner.

At the time of his graduation in 2009, Plaintiff had borrowed, in principal amount, approximately $41,900 in student loans.

28.    In order to take out his FFELP loans, Plaintiff, like all other student borrowers, executed a FFELP Master Promissory Note ("MPN").

29.    The MPN is a form contract, prepared by the federal government, which imposes duties and obligations on the lender and the borrower, here Navient Solutions, f/k/a Sallie Mae, and Plaintiff, respectively.

30.    For example, Plaintiff promised to pay the lender all loan amounts disbursed under the terms of the MPN, plus interest and other charges and fees.

31.    Plaintiff also authorized the lender to release certain information pertinent to Plaintiff's loans.  However, the release of information was limited to Plaintiff's schools, lenders, guarantors, the Department of Education, and their agents.

32.    The terms of the MPN also repeatedly direct the borrower to contact the lender for questions about the subject student loan, including the various repayment plans, consolidation of more than one student loan, capitalization of interest, or any other questions arising out of the borrower's student loan.

33.    Defendant Navient Solutions and/or Sallie Mae Inc. was the lender pursuant to the MPN for Plaintiff's FFELP loans.[1]

---

[1] Multiple requests for Plaintiff's account information were made to Navient Solutions prior to filing of this lawsuit, both by Plaintiff and Plaintiff's counsel.  Navient Solutions did not respond to these requests.

34.     From the summer of 2010 through the fall of 2014, Plaintiff was enrolled in Income Based Repayment with Sallie Mae, which in the fall of 2014 became Navient Solutions.

35.     During this period, Plaintiff, as directed to do by the MPN—and by Defendant Navient's website—consulted his loan servicer Navient Solutions regarding his best options for repayment.

36.     He also consulted Navient Solutions regarding how to remove the cosigner from one of his private student loans.

37.     In and around the fall of 2014, during these conversations regarding repayment options, Navient Solutions purposely omitted from its conversations with Plaintiff the best repayment option for him: direct consolidation of his existing FFELP loans through the Department of Education.

38.     Upon information and belief, Defendant Navient Solutions intentionally misled or confused Plaintiff and borrowers in an effort to prevent or delay consolidation with the Department of Education.

39.     Upon information and belief, Defendant Navient Solutions knew that student loan borrowers tended to be financially naïve and would rely on the advice of Navient Solutions.

40.     Navient Solutions and Navient put statements on their website, mailings, and other communications to borrowers, which encouraged borrowers to consult with Navient Solutions to find out what their best repayment options were.  For example, currently and at all times relevant to this lawsuit, on a website that Navient owns and controls, Navient prominently displays a quote of its CEO stating, "Enhancing the financial success of our

8

customers is everything we stand for." Also prominently displayed on the website is this statement: "We help our clients and millions of Americans achieve financial success."

41.     Upon information in belief, Navient Solutions' strategy to mislead and confuse borrowers about their repayment and consolidation options was developed at the direction of Defendant Navient to help it achieve its stated corporate goal of maximizing profits from its FFELP portfolio by preventing and/or stanching consolidations with the Department of Education.

42.     As a result of Defendant Navient Solutions' policy of purposely confusing and misleading borrowers, many borrowers, such as Plaintiff, were unaware of their ability to simply consolidate their FFELP loans at a discount with the Department of Education.

STUDEBT

43.     As a direct and foreseeable result of Navient Solutions' fostered climate of confused and misled borrowers, predatory "debt consolidation" or "student debt relief" companies began popping up across the country.

44.     In the fall 2014, Plaintiff was contacted out of the blue by one of these organizations, Defendant Studebt, via his cellular phone. Studebt was soliciting services as a consolidator of student loans.

45.     Upon information and belief, Studebt used an "automatic telephone dialing system", as defined by 47 U.S.C. § 227(a)(1) to place its calls to Plaintiff attempting to solicit its services as a consolidator of student loans.

46.     Studebt's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

47.    Studebt's calls were placed to a telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

48.    At no time did Studebt possess Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

49.    Studebt, which was in possession of information regarding Plaintiff's student loans, convinced Plaintiff it could help him with his student loans and various repayment plans through a well-organized customer service department and advanced website.

50.    During the fall of 2014, Studebt, through its customer service representatives in telephone calls with Plaintiff, told Plaintiff that he would save thousands of dollars, that he could qualify for Public Service Loan Forgiveness, and that he would see his monthly payment go down if he enrolled with Studebt.

51.    Studebt told Plaintiff that he should never contact the Department of education himself because it could interfere with Studebt's handling of the billing and paperwork.

52.    As part of his enrollment, Plaintiff was fraudulently induced into signing a power of attorney, appointing Studebt to handle his student loan accounts.

53.    After electronically submitting application materials and an initiation fee of $599, Plaintiff signed up for monthly payments of $39.00 to Studebt, beginning in February 2015.

54.    These payments were debited from Plaintiff's bank account electronically.

55.    Plaintiff continued paying $39 per month to Studebt, for a period of approximately two years, believing that amount to be his new student loan payment.

56.    Unbeknownst to Plaintiff, Studebt used the fraudulently obtained power of attorney from Plaintiff to consolidate Plaintiff's loans with the Department of Education, but then immediately enrolled Plaintiff into forbearance.

57.    As a result, although Plaintiff was making continuous monthly payments, he was not actually making payments toward his student loans, which remained in forbearance, accruing interest.

58.    Instead, the payments were simply going to Studebt.

59.    At some point between 2014 and 2016, Studebt became Student Debt Relief Group.

60.    At various times during this period, both Studebt and Student Debt Relief Group informed Plaintiff by electronic mail that his student loan payments were being made and that he was on track to qualify for Public Service Loan Forgiveness.

61.    As late as November 11, 2016, a customer service representative of Student Debt Relief Group informed Plaintiff via electronic mail that he had only eight years of payments left to qualify for Public Service Loan Forgiveness—a false statement because his $39 monthly payments to Studebt were not qualifying payments.

62.    Also in early 2017, Plaintiff was contacted by a servicer for his Department of Education Consolidation Loan, who reported to him that he had not made a payment since his loans were consolidated in early 2015.

63.    Plaintiff reported this scheme to the New York State Attorney General's Office in early 2017.

11

64.    Upon information and belief, after being contacted by the New York State Attorney General's Office, Studebt and/or Student Loan Relief Group immediately wired all of Plaintiff's payments, including his $599 "initiation" fee and $39 monthly payments into Plaintiff's bank account.

65.    However, over the course of the preceding two years, Plaintiff's consolidation loan had increased from an outstanding amount of principal and accrued interest of $41,021.33 in February 2015 to $45,651.30 in February 2017.

66.    In addition, Plaintiff, who since October 2012 has been continuously working at a qualifying service job under the Public Service Loan Forgiveness Act of 2007, had not made one single qualifying payment (of the required 120) through February of 2017.

67.    Thus, rather than being nearly halfway through the required ten years of public service and qualifying payments, due to all of Defendants' actions, Plaintiff had not even begun.

## CLASS ALLEGATIONS

68.    Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (collectively, the "Class"): All persons who held a FFELP loan with Defendant Navient Solutions, formerly known as Sallie Mae Inc., from the years 2010 to the present.

69.    Plaintiff also brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23(c)(3)(5) of the Federal Rules of Civil Procedure, on behalf of the following subclass (collectively, the "Subclass"): all Class members who were

also customers and/or victims of Defendant Studebt, also known as Student Debt Relief Group, also known as Student Loan Relief Counselors.

70.     Excluded from the Class and Subclass are all persons who make a timely election to be excluded from the Class; governmental entities; the Judge to whom this case is assigned and his/her immediate family; and Plaintiff's Counsel. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

71.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

72.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

73.     Numerosity. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. For purposes of this complaint, Plaintiff alleges that there are estimated to be more than 1,000,000 members in the Class. The precise number of Class members is unknown to Plaintiff but may be ascertained from Navient Solutions' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

74.     Likewise, the members of the Subclass are so numerous and geographically dispersed that individual joinder of all Subclass members is impracticable. For purposes of this complaint, Plaintiff alleges that there are estimated to be more than 1,000 members in

the Subclass. The precise number of Subclass members is unknown to Plaintiff but may be ascertained from books and records of Studebt. Subclass members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

75.    Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class and Subclass members, including, without limitation:

a)    Whether Navient and Navient Solutions engaged in the conduct alleged herein;

b)    Whether Navient Solutions had an implicit duty pursuant to the MPN to members of the Class to advise them of their option to consolidate their loans directly with the Department of Education;

c)    Whether Navient and Navient Solutions communicated to members of the Class (through advertisements, direct mailings, their websites, and via telephone), statements intended to convince members of the class into contacting Navient Solutions regarding repayment of student loans;

d)    Whether Navient directed Navient Solutions to mislead borrowers regarding their repayment options, in particular regarding their option to consolidate directly with the Department of Education, in an effort to maximize profits from student loan asset backed securities;

e)    Whether Navient and Navient Solutions' conduct constitutes breach of contract, and tortious interference with contract, as asserted herein;

14

f)      Whether Plaintiff and the other Class members paid increased principal and interest payments as a result of Navient Solutions' coordinated campaign of misleading them;

g)      Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount;

h)      Whether Studebt engaged in the conduct alleged herein;

i)      Whether Studebt contacted members of the Subclass on their cellular telephones without prior consent, using an automatic telephone dialing system;

j)      Whether Studebt intentionally deceived members of the Subclass into executing a power of attorney in favor of Studebt;

k)      Whether members of the Subclass reasonably relied on representations of Studebt, including on its sophisticated customer service department and website;

l)      Whether Studebt used the power of attorney obtained on behalf of members of the Subclass to consolidate their loans, place them into forbearance, then continue to collect payments from Subclass members, constituting a breach of fiduciary duty owed to Subclass members;

m)      Whether Plaintiff and the other Subclass members are entitled to damages and other monetary relief and, if so, in what amount.

76.      Typicality: Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Navient and Navient Solutions' wrongful conduct as

15

described above, and all Subclass members were comparably injured through Studebt's wrongful conduct as described above.

77.    Adequacy: Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class and Subclass representative because his interests do not conflict with the interests of the other members of the Class or Subclass he seeks to represent; Plaintiff has retained competent counsel; and Plaintiff intends to prosecute this action vigorously. The Class's and Subclass's interests will be fairly and adequately protected by Plaintiff and his counsel.

78.    Superiority: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class and Subclass members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Navient, Navient Solutions, and Studebt, so it would be impracticable for the members of the Class and Subclass to individually seek redress for Navient, Navient Solutions, and Studebt's wrongful conduct. Even if Class and Subclass members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

16

## CLAIMS BROUGHT ON BEHALF OF THE CLASS

## COUNT 1

## BREACH OF THE COVENANT OF GOOD FAITH

## AS AGAINST NAVIENT SOLUTIONS

79.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

80.    The MPN repeatedly directs borrowers to contact their lender in order to determine the best course of repayment for their FFELP loan.

81.    Implicit in the MPN is a reciprocal covenant of good faith and fair dealing that the lender will help the borrower determine his or her best course of repayment for their FFELP loan.

82.    As a lender, Navient Solutions repeatedly misled, confused, or otherwise failed to assist Plaintiff and other Class members determine the best course of repayment for their FFELP loan.

83.    In particular, the covenant of good faith and fair dealing required Navient Solutions to inform Plaintiff and other Class members of the option to consolidate their FFELP loans at a discount with the Department of Education.

84.    Upon information and belief, Navient Solutions purposely failed to disclose this material fact, the option to consolidate at a discount with the Department of Education, in its consultations with Plaintiff and other Class members.

85.    By misleading, confusing, and omitting material information in conversations with Plaintiff and other Class members, Navient Solutions breached the covenant of good faith and fair dealing implicit in the MPN.

17

86.    As a direct and proximate result of Navient Solutions' breach, Plaintiff and other Class Members have been damaged in an amount to be determined at trial, in the form of increased payments of principal and interest, and lost years of qualifying service under the Public Service Loan Forgiveness Program.

## COUNT 2
## TORTIOUS INTERFERENCE WITH CONTRACT
## AS AGAINST NAVIENT

87.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

88.    For many years now, Navient has sought to increase the size of its profits from the millions of student loan accounts that it holds.

89.    FFELP loans are Navient's biggest source of revenue. As a creation of federal statute, FFELP loans are highly regulated, and thus lenders of FFELP loans are prevented from increasing profits by increasing interest rates or imposing fees other than those allowed by law and regulation.

90.    Navient faced a potential significant loss of revenue if many of its FFELP loans were abruptly consolidated with the Department of Education.

91.    As a result, Navient procured Navient Solutions' breach of the covenant of good faith with Plaintiff and other Class members in order to maximize profits from its FFELP loan assets.

92.    Upon information and belief, Navient knew that many of their borrowers were financially naïve, and would follow advice they received from Navient Solutions.

18

93.    After March 30, 2010, at the direction of Navient, Navient Solutions purposely withheld from Plaintiff and other Class members that the best repayment option was a simple direct consolidation loan from the Department of Education.

94.    As a result of Navient's inducement of Navient Solutions' breach of contract, Plaintiff and other class members were damaged in an amount to be determined at trial, in the form of continued accrual and capitalization of interest on FFELP student loans.

## COUNT 3

## BREACH OF CONTRACT AS AGAINST NAVIENT SOLUTIONS

95.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

96.    As discussed above, in signing the MPN, Plaintiff and other Class members agreed to allow the lender, Navient Solutions, to release personal information related to the FFELP loans, limited to Plaintiff's schools, lenders, guarantors, the Department of Education, and their agents.

97.    Upon information and belief, Navient Solutions breached the MPN by releasing personal information regarding Plaintiff's FFELP loans to entities other than those specifically allowed in the MPN.

98.    Upon information and belief, Studebt and other fraudulent student debt companies were able to acquire personal information regarding Plaintiff's and Class Members' FFELP loans from Navient Solutions, in violation of the MPN.

99.    Studebt and other fraudulent student debt relief companies used this personal information to defraud and injure Plaintiff and other members of the Subclass.

100.    As a result of Navient Solutions' breach, Plaintiff and other class members were damaged in an amount to be determined at trial.

## CLAIMS BROUGHT ON BEHALF OF THE SUBCLASS

## COUNT 4

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

101.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

102.    The foregoing acts and omissions of Defendant Studebt constitute numerous and multiple negligent or knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 et seq.

103.    As a result of Studebt's violations of 47 U.S.C. § 227 et seq., Plaintiff and the Subclass Members are entitled an award of at least $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT 5

## FRAUD

104.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

105.    Plaintiff bring this Count individually and on behalf of the nationwide Subclass against Defendant Studebt.

106.    Upon information and belief, Studebt was aware that millions of student loan borrowers were eligible for direct consolidation loans from the Department of Education following the passage of the Health Care and Education Reconciliation Act of 2010.

107.    Studebt was aware that many student loan borrowers were confused or unaware of their options to consolidate with the Department of Education as a result of the purposeful malfeasance of Defendants Navient Solutions and Navient.

108.    Upon information and belief, Studebt acquired personal information regarding Plaintiff and other members of the Subclass from Navient Solutions.

109.    Studebt used this information to contact Plaintiff and other members of the Subclass, and fraudulently induce them into purchasing the services of Studebt.

110.    Studebt falsely assured Plaintiff that his monthly student loan payment would go down if he purchased the services of Studebt.

111.    Using these misrepresentations, Studebt induced Plaintiff into signing a power of attorney, authorizing Studebt to act on Plaintiff's behalf with regard to his student loans.

112.    Studebt employed a sophisticated website and fully staffed customer service department, making Plaintiff's and other Subclass members' reliance on Studebt's representations reasonable.

113.    Using the power of attorney, Studebt, while falsely assuring Plaintiff that his monthly payment would go down to $39 and that he was making qualifying payments toward Public Service Loan Forgiveness, consolidated Plaintiff's loans with the Department of Education, then promptly put them into forbearance for a period of two years.

114.    During this period of two years, Studebt repeatedly assured Plaintiff that he was making his student loan payments and was on track to qualify for Public Service Loan Forgiveness.

21

115.    In reality, Studebt was not forwarding any of Plaintiff's payments towards his student loans, and was simply pocketing his $39 monthly payments as well as his $599 initiation fee.

116.    As a result of Studebt's fraudulent scheme, Plaintiff and other Subclass members were damaged in an amount to be determined at trial, including initiation and monthly fees, as well as increased amounts of accrued and capitalized interest.

## COUNT 6

### BREACH OF FIDUCIARY DUTY

117.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

118.    Studebt fraudulently obtained a power of attorney from Plaintiff and other members of the Subclass.

119.    Although fraudulently obtained, the power of attorney imposed on Studebt a fiduciary duty with respect to Plaintiff's and other members' of the Subclass student loans.

120.    By failing to forward Plaintiff's and other members' of the Subclass monthly payments to the Department of Education, Studebt breached its fiduciary duty.

121.    Plaintiff and other members of the Subclass suffered damages in an amount to be determined at trial, in the form of increased interest accruals and capitalizations as a result of Studebt's breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of members of the nationwide Class and Subclass, respectfully requests that the Court enter judgment in his favor and against Defendants, as follows:

A.    Certification of the proposed Nationwide Class and Subclass, including appointment of Plaintiff's counsel as Class Counsel;

B.    Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

C.    An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

D.    An award of costs and attorneys' fees; and

E.    Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED:        October 3, 2017
                  Buffalo, New York

                                            HAGERTY & BRADY

                                            s/ Daniel J. Brady
                                            Daniel J. Brady, Esq.
                                            69 Delaware Ave. Suite 1010
                                            Buffalo N.Y. 14202
                                            (716) 856-9443 office
                                            (716) 856-0511 fax
                                            dbrady@hagerty-brady.com

23