UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| SHAWN M. DAVIS, individually and on behalf of all others similarly situated, | **REPORT AND RECOMMENDATION** |
| Plaintiff, | |
| v. | 17-CV-00992-LJV-JJM |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, LLC, FORMERLY KNOWN AS SALLIE MAE, INC., and STUDEBT, ALSO KNOWN AS STUDENT DEBT RELIEF GROUP ALSO KNOWN AS STUDENT LOAN RELIEF COUNSELORS | |
| Defendants. | |

_____

Before the court is the motion of defendants Navient Corporation ("Navient") and Navient Solutions, LLC ("Navient Solutions") to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6), or in the alternative to strike the class allegations pursuant to Rule 23 [13].[1] Having reviewed the parties' submissions [13, 18, 23], and heard oral argument on February 16, 2018 [24], I recommend that the motion be granted in part and denied in part.

## BACKGROUND

Plaintiff's claims arise from loans which he received under the Federal Family Education Loan Program ("FFELP"). Complaint [1], ¶¶13, 27, 28. He alleges that Navient is a holding company that holds "the nation's largest portfolio" of FFELP loans, which are serviced by Navient Solutions, f/k/a Sallie Mae, Inc., its wholly-owned subsidiary. Id. ¶¶7, 8, 11, 12, 16.

---

[1]   Bracketed references are to the CM/ECF docket entries, and page references are to numbers reflected on the documents themselves rather than to CM/ECF pagination.

In connection with plaintiff's FFELP loans, he signed a Federal Stafford Loan Master Promissory Note ("MPN"). Id., ¶28; [13-2], pp. 2-7 of 7. Plaintiff alleges that "Navient Solutions and/or Sallie Mae Inc. was the lender pursuant to the MPN". Complaint [1], ¶33. He alleges that he was enrolled in "Income Based Repayment", and that as directed by the MPN and Navient's website, he "consulted his loan servicer Navient Solutions regarding his best options for repayment" in the Fall of 2014. Id., ¶¶34-35. He alleges that during these conversations, "Navient Solutions purposely omitted from its conversations with [him] the best repayment option for him: direct consolidation of his existing FFELP loans through the Department of Education", which offered a discounted interest rate. Id., ¶¶18, 37.

As a result of this conduct, plaintiff alleges that Navient Solutions breached an implied covenant of good faith and fair dealing (id., Count 1), and that Navient tortiously interfered with the MPN by directing Navient Solutions to purposefully withhold from borrowers the fact that the best repayment option was a direct consolidation loan with the Department of Education. Id., Count 2. Separately, plaintiff alleges that Navient Solutions breached the MPN by "releasing personal information regarding [his] FFELP loans" to "Studebt and other fraudulent student debt companies", who used that information to "defraud and injure". Id., ¶¶97-99, Count 3.[2]

Plaintiff purports to assert these claims on behalf of himself and a class of "[a]ll persons who held a FFELP loan with . . . Navient Solutions, formerly known as Sallie Mae, Inc., from the years 2010 to the present". Id., ¶¶68, 69.

---

[2] Studebt was dismissed from the action, without prejudice, by stipulation of the parties [9].

# ANALYSIS

In seeking dismissal of the Complaint, defendants argue that plaintiff's claims are preempted by the Higher Education Act ("HEA") (defendants' Memorandum of Law [13-1], pp. 6-9), and that Navient Solutions is not a party to the MPN. Id., pp. 9-13.  They also move for dismissal pursuant to Rule 19(a)(1)(B) for plaintiff's failure to join the Department of Education, an indispensable party.  Id., pp. 14-15.  If any claims survive, defendants move in the alternative to strike the class allegations.  Id., pp. 15-20.

**A.     Motion to Dismiss**

**1.     Dismissal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id.

**2.     Are Plaintiff's Claims Preempted?**

"Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are 'without effect.'"  New York SMSA Limited Partnership v. Town of Clarkstown, 612 F.3d 97, 103–04 (2d Cir. 2010).  Defendants argue that Section 1098g of the HEA

preempts Counts 1 and 2 of the Complaint, both of which focus on the alleged failure of Navient Solutions to disclose the borrower-favorable option of a direct consolidation loan. *See* Defendants' Reply [23], p. 4 n. 4 (conceding "that the third cause of action . . . would not be covered by [their] preemption argument"). That section of the HEA states that "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the [HEA] . . . shall not be subject to any disclosure requirements of any State law". 20 U.S.C. §1098g.

Defendants rely upon "express preemption, where Congress has expressly preempted local law", and "conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives". New York SMSA Limited Partnership, 612 F.3d at 104. *See* Defendants' Reply [23], p. 5. Their argument fails under either theory.

      a.     **Express Preemption**

The parties cite conflicting authorities on this issue. Defendants rely upon Chae v. SLM Corp., 593 F.3d 936 (9th Cir. 2010), in which the plaintiffs argued that "that the billing statements and standardized loan applications 'misrepresent[ ] that the Student Loans confer rights, remedies, and obligations' which do not exist, thereby constituting an unfair or deceptive practice" under California law. Id. at 942. The court concluded that since the written materials were "[a] properly-disclosed FFELP practice", they could not "simultaneously be misleading under state law, for state disclosure law is preempted by the federal statutory and regulatory scheme". Id.[3]

---

[3] The Ninth Circuit was careful to circumscribe the scope of it preemption determination, concluding that plaintiff's remaining claims for "breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and the use of fraudulent and deceptive practices apart from the billing statements", were "not impacted by any of the FFELP's express preemption provisions". Chae, 593 F.3d at 943.

Plaintiff relies upon Genna v. Sallie Mae, Inc., 2012 WL 1339482 (S.D.N.Y. 2012), in which the plaintiff's claims arose from the defendant's false statement over the telephone that plaintiff's loan was in forbearance and no payment was required. Id. at *1-2. Contrasting Chae, where the plaintiffs "challenged written statements that were explicitly regulated and sanctioned by federal law", the court in Genna noted that "the statements at issue . . . were neither authorized by the Secretary of Education nor conformed to any explicit dictates of federal law". Id., *8. Reasoning that "[t]here is nothing in the HEA that standardizes or coordinates how a customer service representative of a third-party loan servicer like Sallie Mae shall interact with a customer . . . in the day-to-day servicing of his loan", the court concluded that the HEA did not expressly preempt plaintiff's claims. Id.

Plaintiff argues (and defendants do not dispute) that a "lender's conduct over the telephone is not subject to express statute or regulations". Plaintiff's Memorandum of Law [18], p. 8. Therefore, to the extent that plaintiff's claims arise from Navient Solutions' unregulated conduct over the telephone, they are similar to those in Genna, and are not subject to express preemption.

        b.      **Conflict Preemption**

Defendants next argue that conflict preemption bars plaintiff's claims "because Congress intended to create a uniform structure for serving FFELP loans, which is inconsistent with allowing regulation through state law causes of action". Defendants' Memorandum of Law [13-1], p. 9. A similar argument was rejected in Genna, which held that the Federal Register indicates that the FFELP is "concerned with the effect of state law on 'actions to collect loans,' on 'collection action,' and on 'collection practices' - *not with the effect of state law on loan servicing*. 55 FR 40120. To read it more broadly than what is clearly set out in the Federal Register . . . would be, in

effect, to find field preemption, which precedent precludes us from doing." 2012 WL 1339482 at *9 (emphasis added). Therefore, I conclude that conflict preemption does not bar plaintiff's claims.

### 3. Is Navient Solutions a Party to the MPN?

"As a general rule, in order for someone to be liable for breach of contract, that person must be a party to the contract." Dragushansky v. Nasser, 2013 WL 4647188, *3 (S.D.N.Y. 2013). Although the Complaint [1] alleges that "Navient Solutions and/or Sallie Mae Inc. was the lender pursuant to the MPN for Plaintiff's FFELP loans" (id., ¶33), defendants attach the MPN to their motion papers [13-2], which states that Chase Bank is the lender for plaintiff's loan. Id., p. 2 of 7. Plaintiff does not dispute the authenticity of the MPN (plaintiff's Memorandum of Law [18], p. 2 n. 2) or argue that consideration of the MPN requires conversion of the motion into a motion for summary judgment.[4]

      Instead, plaintiff attempts to trace the ownership of his loan from Chase Bank to Navient Solutions by relying on various public filings. *See* [18-2] - [18-5]. However, courts are allowed only "to take judicial notice of the *fact* that . . . [public] filings contained certain information, without regard to the truth of their contents". Staehr v. Harford Financial Services Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008) (emphasis in original); Savage v. Galaxy Media & Marketing Corp., 2012 WL 2681423, *1, n. 2 (S.D.N.Y. 2012), aff'd, 526 Fed App'x 102 (2d Cir. 2013) (Summary Order) ("We also refer to public filings, the fact - though not the truth- of which we are permitted to take judicial notice on a motion to dismiss"). Therefore, the filings cited by plaintiff do not establish the truth of their contents. Even if I were able to consider their contents,

---

[4] "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document "even if it is not formally incorporated by reference". Broder v. Cablevision Systems Corp., 418 F.3d 187, 196 (2d Cir. 2005).

these filings establish at most an attenuated nexus between Navient Solutions (as opposed to Navient) and the FFELP loans originated by Chase Bank, and fail to address the critical question, namely ownership of plaintiff's specific loan.

Since the MPN contradicts the Complaint's allegation that Navient Solutions was the lender, the MPN "control[s] and the court need not accept as true the plaintiff's allegations". Rickard v. Western New York Independent Living Project, Inc., 2009 WL 1468459, *4 (W.D.N.Y. 2009).  In any event, having the benefit of  Navient's  Form S-1 Statement [23-1] filed by defendants in connection with their reply, at oral argument plaintiff's counsel acknowledged that "it appears that there is a subsidiary of Navient, identified as Sallie Mae Investment Corporation that owns the actual FFELP loans", and that "it appears that plaintiff has simply named the wrong subsidiary of Navient".[5]

At oral argument plaintiff's counsel further suggested that the failure to name the correct subsidiary was "just a misnomer" which can be corrected by amendment.[6] At this point it is difficult to see how the existing claims, which are based upon communications with Navient Solutions, could be asserted against a different entity. Nevertheless, recognizing that "this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule

---

[5]     All quotations from the February 16, 2018 oral argument have been unofficially transcribed by my chambers from the digital audio recording of that proceeding.

[6]     Even if Navient Solutions was not responsive to plaintiff's requests for account information (Complaint [1], p. 7 n. 1), he could have resorted to pre-action discovery in state court to determine the owner of his loan prior to commencing this action in federal court. See Bryan v. American West Airlines, 405 F. Supp. 2d 218, 221 (E.D.N.Y. 2005) (plaintiff "sought and obtained an order to show cause, pursuant to CPLR § 3102(c), for the limited purpose of obtaining discovery to identify the appropriate parties to his contemplated action").

12(b)(6)", Porat v. Lincoln Towers Community Association, 464 F.3d 274, 276 (2d Cir. 2006), I recommend that the Complaint be dismissed, without prejudice to an opportunity to replead.[7]

Having recommended that the Complaint be dismissed, I also recommend that defendants' motion to strike the class allegations be denied as moot. *See* Hughes v. Panasonic Consumer Electronics Co., 2011 WL 2976839, *28 (D.N.J. 2011) ("[a]s the Court dismisses the Amended Complaint in its entirety, Panasonic's motion to strike the class allegations is dismissed as moot"). Nevertheless, recognizing the possibility that my recommendation to dismiss plaintiff's claims on his own behalf may not be adopted, I will address that motion in the alternative.

**B.      Motion to Strike the Class Allegations**

Although class certification typically occurs at a later stage of the proceedings, "[a] motion to strike class allegations is 'procedurally permissible' at the pleading stage." Tullie v. Quick Cash, Inc., 2014 WL 12782961, *2 (D.N.M. 2014). *See also* McCrary v. Stifel, Nicolaus & Co., 687 F.3d 1052, 1059 (8th Cir. 2012) ("class claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion"); Murdock-Alexander v. Tempsnow Employment, 2016 WL 6833961, *3 (N.D. Ill. 2016) ("[t]he interplay of Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) empowers the Court to dismiss or strike class allegations at the pleading stage"); General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982) ("[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim").

Iqbal's plausibility standard applies to such motions. *See* Bourbonnais v. Ameriprise Financial Services, Inc., 2015 WL 12991000, *7 (E.D. Wis. 2015); Green v. Liberty Insurance

---

[7] Given this recommendation, I have not addressed defendants' alternative argument concerning failure to join an indispensable party.

Corp., 2016 WL 1259110, at *2 (E.D. Mich. 2016) ("[w]hen the defendant challenges class certification based solely on the allegations in the complaint, the standard is the same as applied in deciding a motion to dismiss under Rule 12(b)(6)"); Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (applying a plausibility standard).[8]

"Although efforts to strike class allegations at the pleadings stage are often denied as premature", Edwards v. Oportun, Inc., 193 F. Supp. 3d 1096, 1100 (N.D. Cal. 2016), plaintiff's allegations must be "sufficient to show that it is plausible that plaintiffs will be able to satisfy the Rule 23 requirements after conducting discovery". Bourbonnais, 2015 WL 12991000 at *7. *See also* Wright v. Family Dollar, Inc., 2010 WL 4962838, *1 (N.D. Ill. 2010) ("courts may - and should - address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained"); Duvio v. Viking Range Corp., 2013 WL 1180948, *3 (E.D. La. 2013) ("[t]ypically, the decision to certify a class action can be made on the pleadings").[9]

Those requirements include "satisfying Rule 23(a)'s prerequisites" of numerosity, commonality, typicality, and adequacy of representation, as well as demonstrating "that the action is

---

[8] The case law on this issue is not uniform. Other courts "have held the Rule 12(b)(6) pleading standard, as 'amended' in Iqbal . . . does not apply to class allegations". Hockenbury v. Hanover Insurance Co., 2016 WL 552967, *1 n.1 (W.D. Okla. 2016) (citing cases). However, even if the Rule 12(b)(6) pleading standards set forth in Iqbal did not apply to plaintiff's class allegations, I would still be required to determine whether it is "'plain enough from the pleadings' that plaintiffs cannot meet their burden under Rule 23 to show class treatment is appropriate in this case". Royal Mile Co. v. UPMC, 40 F. Supp. 3d 552, 579 (W.D. Pa. 2014). Under that standard, my determination would not change.

[9] This does not impermissibly shift the burden on the motion to plaintiff as he contends. Plaintiff's Memorandum of Law [18], pp. 21-22. "Regardless whether the defendant files a motion to strike class allegations pursuant to Federal Rule of Civil Procedure 12(f) based upon insufficient class allegations in a complaint, or a plaintiff files a motion to certify a class pursuant to Rule 23 based upon a more fully developed record, the plaintiff has the burden to prove that the requirements set forth in Rule 23 are met". Cole's Wexford Hotel, Inc. v. UPMC, 127 F. Supp. 3d 387, 404 (W.D. Pa. 2015).

maintainable under Rule 23(b)(1), (2), or (3)". Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997). The Complaint [1] states that plaintiff will be seeking certification under Rule 23(b)(3) (id., ¶68), which imposes two requirements in addition to those of Rule 23(a): predominance and superiority. "Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." Amchem Products, 521 U.S. at 615.

Addressing only Counts 1 and 2 of the Complaint,[10] defendants argue that the proposed class of "[a]ll person who held a FFELP loan with Defendant Navient Solutions, formerly known as Sallie Mae, Inc., from the years 2010 to the present", fails to satisfy Rule 23(b)(3)'s predominance and superiority requirements "because the ultimate analysis of liability will require a highly fact-intensive and individualized analysis of the interactions that Navient Solutions had with borrowers". Defendants' Memorandum of Law [13-1], p. 18.

"Rule 23(b)(3) . . . does not require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to classwide proof. What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members.'" Amgen Inc. v. Connecticut Retirement Plans & Trust Funds, 568 U.S. 455, 469 (2013) (*quoting* Rule 23(b)(3)) (emphasis in original). "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." In re U.S. Foodservice Inc. Pricing Litigation, 729 F.3d 108, 118 (2d Cir. 2013).

---

[10] While defendants seek dismissal of all class allegations, their arguments do not specifically address the allegations of Count 3 of the Complaint.

While the putative class are all borrowers of FFELP loans owned by a common lender, the similarities end there.[11] As defendants note, in order to determine whether each class member has a viable claim, it would be necessary to consider "the nature of the putative class member's communications" with Navient Solutions, "whether the putative class member was eligible for consolidation", whether Navient Solutions "adequately communicated that eligibility to them", and "whether the putative class member relied on the information (or lack of information)" from Navient Solutions. Defendants' Memorandum of Law [13-1], pp. 18-19.

In arguing that the need for an individualized analysis does not defeat the predominance requirement, plaintiff relies upon Young v. Nationwide Mutual Insurance Co., 693 F.3d 532 (6th Cir. 2012). Plaintiff's Memorandum of Law [18], pp. 23-24. In that case, the plaintiffs alleged that "their insurer charged them a local government tax on their premiums when either the tax was not owed or the tax amount owed was less than the insurer billed." 693 F.3d at 535. In opposing class certification, the insurer argued that predominance could not be satisfied because the plaintiffs could not "establish the causation element of their claims without reviewing the communications between each policyholder and insurance agent to decipher where the error originated". Id. at 544. That argument was rejected because the plaintiffs were proceeding "on the theory that verification processes using geocoding software would catch most types of errors and that Defendants caused each class members' injury simply by failing to use such processes", which the court found to be "a predominate issue central to each of Plaintiffs' claims and subject to generalized proof". Id. Here, by contrast, there does not appear to be any generalized proof that could establish whether each class member had a claim.

---

[11] While a court "is empowered under Rule 23(c)(4) to carve out an appropriate class," it "is not obligated to implement Rule 23(c)(4) on its own initiative". Lundquist v. Security Pacific Automotive Financial Services Corp., 993 F.2d 11, 14 (2d Cir. 1993).

The principles that render fraud claims unsuited for class certification are equally applicable here. "[C]lass certification of fraud claims based on oral misrepresentations is appropriate only where the misrepresentations relied upon were materially uniform, allowing such misrepresentations to be demonstrated using generalized rather than individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1249 (2d Cir. 2002). "'[A]lthough having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.'" Id. at 1253 (*quoting* Rule 23(b)(3) Advisory Committee's note (1966 amendment)). *See also* In re St. Jude Medical, Inc., 522 F.3d 836, 838 (8th Cir. 2008) ("[b]ecause proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases are often unsuitable for class treatment").

Here there is no uniformity among the proposed class members either as to the alleged conduct of Navient Solutions, or as to their alleged injuries arising from that conduct. The Complaint's allegations range from Navient Solutions "omit[ing] from its conversations with Plaintiff the best repayment option for him: direct consolidation of his FFELP loan" (Complaint [1], ¶37), to Navient Solutions affirmatively "misleading" class members in determining "the best course of repayment for their FFELP loan". Id., ¶¶82, 85. Individualized inquiry is also necessary to determine whether the class members relied on the information (or lack of information) and, if so, whether they sustained an injury. As defendants point out, plaintiff was enrolled in the Income Based Repayment plan, which can reduce monthly payments to as low as $0. Defendants' Memorandum of Law [13-1], p. 19. Therefore, without an individualized inquiry it cannot be

assumed that a direct consolidation loan would have been more advantageous for plaintiff, let alone any other class member.[12]

Nor is class certification superior to other available methods of adjudication. Rule 23(b)(3) is designed to "cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated". Amchem Products, 521 U.S. at 615 (*quoting* Rule 23(b)(3) Advisory Committee's note (1966 amendment)). The variables that exist as to each member's claim and the resulting confusion which those variables would cause at trial demonstrate that certifying a class would be an inefficient adjudication of the claims.

Therefore, to the extent it has not been rendered moot by my recommendation for dismissal of plaintiff's claims on his own behalf, I recommend that defendants' motion to strike the class allegations be granted as to Counts 1 and 2 of the Complaint, but denied as to Count 3 (which they have not specifically addressed), without prejudice to repleading.

**CONCLUSION**

For these reasons, I recommend that defendants' motion to dismiss [13] be granted, without prejudice to plaintiff's right to file an Amended Complaint consistent with the terms of this

---

[12] Since the MPN does not apply a particular state law, there is also the potential for the application of differing state laws to the class members' claims. In determining whether that variation predominates over the issues common to the class, "the crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues." In re U.S. Foodservice Inc. Pricing Litigation, 729 F.3d at 127. However, since neither party addresses whether the state law variances in claims for breach of the covenant of good faith and fair dealing and tortious interference with contract are sufficiently material to preclude class certification, this also remains a possible hurdle to certification.

Report and Recommendation. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by March 26, 2018.

Any requests for extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated:  March 12, 2018

   /s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge